## WHITE v. UNITED STATES.
### No. 1772.

District Court, W. D. Kentucky.
Aug. 20, 1937.

Chester A. Bennett and Daniel C. Eberly, both of Washington, D. C., for plaintiff.

Bunk Gardner, U. S. Atty., and Eli H. Brown, 3d, Asst. U. S. Atty., both of Louisville, Ky.

HAMILTON, District Judge.

This is an action instituted by the plaintiff, William C. White, against the United States of America, seeking to recover $1,484.25, fraud penalties assessed and collected from him by the Collector of Internal Revenue for the District of Kentucky.

The taxable years involved are 1929 and 1930. For the calendar year 1929 the plaintiff reported a taxable net income of $24,946.72 and voluntarily paid the taxes due thereon. On audit and review by the Commissioner of Internal Revenue, his tax-

able net income was increased $19,225.55, made up of the following items:

| Income from profession | |
|---|---|
| (physician) | $ 4,442.37 |
| Interest received | 82.50 |
| Income from rents | 4,725.63 |
| Increase in profit from sales | 5,428.75 |
| Dividends increased | 919.00 |
| Other income | 2,375.00 |
| | $17,973.25 |

*Deductions decreased:*

| Interest paid | $1,035.89 | |
|---|---|---|
| Taxes paid | 216.41 | 1,252.30 |
| | | $19,225.55 |

The plaintiff is a practicing physician and in his original return reported professional income of $6,384.97. He was a member of a partnership and deducted in his personal return $4,442.37 business expense, which had been deducted in determining partnership income.

The plaintiff filed a joint return and failed to include $82.50 interest received by his wife. He reported $2,676 rents received and omitted $4,725.63, which sum represented payments on mortgages during the year.

The plaintiff sold, during the year, 100 shares of the capital stock of the First National Bank of Louisville, and reported $24,100 profit from said sale. In determining the cost of the stock, he used the purchase price of other shares which resulted in overstating cost $5,428.75.

The plaintiff omitted in his original return $874 dividends received by his wife on stock of the Standard Oil Company of Kentucky.

The plaintiff received from his partner, E. D. Wells, during the calendar year 1929, $2,375 for an interest in his medical practice, no part of which was reported in his original return. Plaintiff insists he believed, when making his return, that this was not income.

The plaintiff deducted in his original return $6,713.14 interest paid which was an overstatement of $1,035.89. The latter sum represented payments on the principal.

The plaintiff overstated taxes paid by him $216.41, and deducted in his original return $3,596.11.

For the calendar year 1930, the plaintiff reported a net loss in his return of $6,143.91. On audit and review, the Commissioner of Internal Revenue found the plaintiff's net income to be $18,739.63. The following changes were made by the Commissioner:

| Rents increased | $ 7,993.92 |
|---|---|
| Increase of profit on sale of stocks | 15,018.30 |
| Dividends increased | 714.00 |
| Other income increased | 2,325.00 |
| | $26,051.22 |

*Deductions:*

| Taxes paid reduced | $ 816.73 | |
|---|---|---|
| Deductible interest increased | (1,984.41) | (1,167.68) |
| Balance | | $24,883.54 |
| Net loss in original return | | 6,143.91 |
| | | $18,739.63 |

The plaintiff showed on his original return a loss from the operation of rental income property $765.96. In arriving at this sum, plaintiff deducted from gross rental income payments on mortgages, costs of improvements, and other capital items.

The plaintiff sold 50 shares of the capital stock of the First National Bank of Louisville and 100 shares of the capital stock of the Standard Oil Company of Kentucky. No profit was reported from either of these sales.

Plaintiff and his wife had received $714 in dividends from the Standard Oil Company of Kentucky, none of which was reported.

He also received during the calendar year 1930 from his partner, E. D. Wells, $2,325 for an interest in his medical practice, no part of which was reported.

Plaintiff deducted in his original return $4,296.11 taxes paid which was on overstatement of $816.73. He also understated interest paid $1,984.41.

Plaintiff is a successful, practicing physician in the City of Louisville and enjoys an excellent reputation for honesty and integrity. His testimony in regard to keeping records of income from which a correct tax return could be made shows gross negligence and an utter disregard of the responsibility resting on him as a citizen to make a fairly accurate return of income to his Government. Section 293 of the Revenue Act of 1928, 26 U.S.C.A. p. 658, chapter 24, § 2293 (26 U.S.C.A. § 293 and note) provides:

"(a) *Negligence.* If any part of any deficiency is due to negligence, or intentional disregard of rules and regulations but without intent to defraud, 5 per centum of the total amount of the deficiency (in addition to such deficiency) shall be assessed, collected, and paid in the same manner as if it were a deficiency, except that the provisions of section 2272(i), relating to the prorating of a deficiency, and of section 2292, relating to interest on deficiencies, shall not be applicable.

"(b) *Fraud.* If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in sections 97 and 98 of this title. (May 29, 1928, 8:00 a. m., c. 852, § 293, 45 Stat. 858).

■ The Commissioner of Internal Revenue assessed the penalties against the plaintiff under section (b) of the above act, and I am convinced from a fair preponderance of the evidence that his omission of income supported the imposition of these penalties.

■ The statute under which the Commissioner acted provides: "If any part of any deficiency is due to fraud with intent to evade tax." The word "fraud" is not defined in the act, and it is to be construed as ordinarily understood.

■■ The purpose in requiring taxpayers to make returns is to promptly bring to the attention of the Government their taxable income. It is well understood that the Government relies largely on the return for the correctness of the tax, and it is not complete unless sworn to by the taxpayer. Some courts hold the rule that a fraud penalty cannot be imposed on the taxpayer unless the facts would also support a criminal prosecution. I do not so view the act here in question. If there has been deliberate suppression of vital facts in the return, which is misleading, it is a fraud, and the misrepresentation will support fraud penalties if made recklessly without knowledge, or if so carelessly done as to lead a trier of facts to believe that the person on whom the duty rests to disclose has knowingly or intentionally failed to do what the law requires.

■ A charge of fraud cannot be sustained unless it is shown that the person charged had in his mind the intention to deceive another, but the intention may be inferred from the consequences of the act. If a person tells a willful falsehood with the intention that it shall be acted upon by the person to whom he tells it, his mind is plainly wicked and he must be said to have acted fraudulently. Again, fraud may be inferred if a person makes a statement recklessly, intending it to be acted upon, without regard to its truth or falsity.

■ The income omitted by plaintiff was large in amount and involved several different items for each of the years. The inference must be drawn from these facts that the plaintiff was reckless in ascertaining his taxable income, and his recklessness was such as to lead me to the conclusion that the fraud penalties were properly assessed and collected.

The plaintiff's petition will be dismissed, the defendant to recover its costs. Counsel will prepare findings of fact and conclusions of law conformable to this memorandum.