Joseph **LABOWITZ**, Plaintiff,

v.

**UNITED STATES** of America, Defendant.

**UNITED STATES** of America, Third-Party Plaintiff,

v.

Dennis **SCHUSTER**, Third-Party Defendant.

No. 68 Civ. 1207.

United States District Court, S. D. New York.

Dec. 21, 1972.

OPINION, FINDINGS OF FACT and
CONCLUSIONS OF LAW

LEVET, District Judge.

Plaintiff in this controversy, Joseph Labowitz ("Labowitz"), is suing the United States of America for a refund of a partial payment of an assessment, in the amount of $13,813.61 against Joseph Labowitz and/or Dennis Schuster, for the unpaid withholding taxes of the Maspeth Steel Co., Inc. ("Maspeth") for the quarterly periods ending September 30, 1960, June 30, 1961, September 30, 1961. Labowitz alleges that although he has paid a portion of the assessment on behalf of Maspeth, he is not, in fact, a person responsible for such payments under 26 U.S.C. §§ 6671, 6672 (I.R.C.1954) and, therefore, should have those funds refunded and the assessments against him vacated.

The United States has counterclaimed for the amount due under the assessment, alleging that Labowitz is a responsible person under Section 6672, and for the unassessed interest and the cost and disbursements of this action. In addition, the United States has filed a third-party complaint against Dennis Schuster who the United States also alleges is a responsible person under the above-said sections of the Internal Revenue Code. Schuster,[1] by his non-appearance, has incurred a default judgment.

After hearing the testimony of the parties, examining the exhibits and the proposed findings of fact and conclusions of law submitted by counsel, this court makes the following findings of fact and conclusions of law:

Schoengold & Sporn, New York City, for plaintiff; Samuel Sporn, New York City, of counsel.

Whitney North Seymour, Jr., U. S. Atty., S. D. New York, for defendant and third-party plaintiff; Milton Sherman, Steven J. Glassman, Asst. U. S. Attys., of counsel.

Alba, Levy & Garofalo, New York City, for third-party defendant; Philip Alba, New York City, of counsel.

### FINDINGS OF FACT

1. This court has jurisdiction over the subject matter and the parties under 28 U.S.C. §§ 1346(a)(1), 1340 and 1345.

2. Joseph Labowitz has been associated with Samuel and Sons Iron and Steel Co., Inc. ("Samuel and Sons")

---

1. Dennis Schuster's attorney was released by an order of this court, signed by Judge Canella on September 21, 1972.

since the early 1940's. (4.) [2] Samuel and Sons was engaged in the purchase and sale of iron and steel scrap and salvage.

3. In 1958 Labowitz became an officer and principal stockholder of Samuel and Sons. (6, 7.)

4. In early 1960, Samuel and Sons purchased a job site, known as Maspeth, on Grand and Maspeth Avenues in Queens, New York. On or about March 24, 1960, Samuel and Sons purchased the steel and wooden structures, to be removed from the Maspeth site for $150,000. (9, 10.)

5. On or about the time Samuel and Sons entered the Maspeth salvage contract to remove the steel and wooden structures from the Maspeth site, two other corporations were formed at the direction of Labowitz. (106–107.) The first of these corporations, incorporated on March 25, 1960, was Schuster and Son Wrecking Corporation (Schuster and Son). (Ex. J.)

On April 5, 1960 Maspeth was formed, again by the same attorney who incorporated Schuster and Son, and at the direction of Labowitz. (106, 107; Ex. K.)

Subsequent to the creation of the Schuster and Maspeth corporations, Samuel and Sons entered into a contract with Schuster and Son with respect to the removal of the steel and wooden structures from the Maspeth site. (15; Ex. 1.)

6. Maspeth was formed primarily to obtain lower interest rates for the Maspeth contract. (29, 72, 94.)

7. Maspeth allegedly became the subcontractor of Schuster and Son with respect to the Maspeth contract for removal of the steel and wooden structures at the Maspeth site. (Plaintiff's complaint, page 3.)

8. During the time the Maspeth salvage contract was in progress both the Schuster and Maspeth Corporations had their offices in the same offices as the Samuel and Sons corporate offices at 214 Kent Avenue, Brooklyn, New York. However, no rent was ever paid by either the Schuster and Son or Maspeth Corporations to Samuel and Sons for the occupation of those premises. (30, 31.) Nor was there any lease between Samuel and Sons and the Schuster and Son or Maspeth Corporations for said occupation. (32.)

9. Labowitz did some, if not all, of the hiring of the Maspeth employees for the Maspeth salvage contract. (137.) Labowitz also had control over these employees at the Maspeth site. (157.)

10. There are no records as to who the officers or stockholders of either the Maspeth or Schuster and Son Corporations were, nor is there any record of any organizational meetings or issuance of stock certificates. (112, 113.)

11. Labowitz did not advance funds to Maspeth. I find that the use of Samuel and Sons funds for the payment of Maspeth's liabilities was not due to Maspeth's "financial difficulties" (plaintiff's pretrial brief, page 2) but because neither Schuster nor Maspeth in fact had any capitalization. (112, 113.) Labowitz, with the use of the funds of Samuel and Sons, therefore had complete control over any and all funds available to Maspeth (136) and made all decisions regarding the payments of debts or creditors of Maspeth (136, 137, 144), including the payment of Federal Employees' Withholding and Social Security liabilities. (138, 139, 149.)

12. The books and financial records of both the Schuster and Son and Maspeth Corporations were maintained by Samuel and Sons' bookkeeper. (124, 133.) The ledger sheets and other financial records of Maspeth were kept within the ledger sheets of Samuel and Sons' own ledger sheets. (134–136.) In addition, the same accountant represented all three corporations. All of these financial and business matters were un-

---

2. Numbers in parentheses refer to the stenographic minutes of the trial before this court on September 21 and 22, 1972.

der the control and direction of Labowitz.

13. The bills of the Maspeth Corporation were delivered to the offices of Samuel and Sons and were paid out of the Samuel and Sons' checking account (135–136) and charged to the "Maspeth Venture" on Samuel and Sons' financial records, under the direction of Labowitz. (179.)

14. Maspeth employees were paid under the direction and control of Labowitz. (133.) This was done by Samuel and Sons' bookkeeper, who deducted the appropriate amounts of withholding and social security taxes due for each of Maspeth's employees. (140.) Samuel and Sons' bookkeeper also prepared the quarterly withholding tax returns on behalf of the Maspeth Corporation at the direction of Labowitz and submitted them to him for his signature. (155, 156.)

15. Labowitz knew that Maspeth was in arrears with respect to the withholding and social security taxes and paid other bills due, knowing that he was in arrears with respect to these obligations. (138, 139.)

16. Labowitz' control over the finances of the Maspeth Corporation and his failure to report and pay the withholding and social security taxes of the Maspeth Corporation for the third quarter of 1960 and the second and third quarters of 1961 was wilful within the meaning of Section 6672 of the Internal Revenue Code.

17. Joseph Labowitz executed, on behalf of Maspeth, in the Brooklyn Office of the Internal Revenue Service on October 31, 1962 the following documents: Statement of Financial Condition of Maspeth, form 433 (Ex. C); Employer's Quarterly Federal Tax Return for Maspeth for the first quarter of 1962, form 941 (Ex. D); Employer's Quarterly Federal Tax Return for Maspeth for the second quarter of 1962, form 941 (Ex. E); agreement to pay federal withholding and social security taxes owed by Maspeth. (Ex. F.)

In addition, Labowitz submitted to the Internal Revenue Service, a "Proposal to the Internal Revenue Service for Payment of Withholding Taxes for Samuel and Sons and Maspeth Steel Co., Inc." (Ex. H), typed at Labowitz' direction and signed by him as an officer of both the Samuel and Sons and Maspeth Corporations (55–56), thereby admitting that he was responsible for the federal withholding tax and social security tax of Maspeth.

18. The parties to this action have stipulated that "On June 25, 1965, the District Director of Internal Revenue made an assessment in the amount of $13,813.61 against Joseph Labowitz and/or Dennis Schuster for the unpaid withholding taxes of Maspeth Steel Company, Inc. for the third quarter of 1960 and the second and third quarters of 1961." (230.)

19. As of the date of trial, Labowitz had paid to the Internal Revenue Service the total amount of $9,050.00 in partial satisfaction of the assessment against him. (Ex. 2; defendant's answer, paragraph 2.)

20. Notwithstanding the denials by Labowitz that he was never a director, officer or stockholder of either the Schuster or Maspeth Corporations (11, 12, 13, 272), this court finds that Labowitz was an officer of the Schuster and Maspeth Corporations (288, 293, 294) and he had complete control over all financial and business aspects of both Maspeth and Schuster as displayed by his signing of the Internal Revenue Service forms (Exs. C, D, E, F); his proposal for settlement (Ex. H) submitted to the Internal Revenue Service; and his direction and control over the flow of funds in respect to the Maspeth salvage contract. (135–140, 151–152.)

## DISCUSSION

In this action plaintiff, Joseph Labowitz, has sought a refund of $9,050 paid by him allegedly on behalf of the Maspeth Steel Company, Inc. in partial satisfaction of a tax assessment against

him and a third-party defendant, Dennis Schuster. The claim is founded upon 26 U.S.C. §§ 3102, 3111, 6671, 6672 (I.R.C. 1954) as amended.

The United States counterclaimed against Labowitz for the balance of the assessment due and filed a third-party complaint against Dennis Schuster. Dennis Schuster, by his nonappearance, has suffered a default judgment.

The assessments by the Internal Revenue Service were made pursuant to Section 6672 of the Internal Revenue Code of 1954 on the theory that Joseph Labowitz and Dennis Schuster were persons required to collect and pay over the withholding and social security taxes with respect to wages paid by Maspeth to its employees during the third quarter of 1960 and the second and third quarters of 1961.

Plaintiff has alleged that he was neither an incorporator officer, director nor a stockholder of the Schuster or Maspeth Corporations. (12.) To be noted here is the fact that there are no records as to who the officers or stockholders of either the Maspeth corporations were, nor is there any record of any organizational meetings or issuance of stock. (112, 113.) Notwithstanding the denials of Labowitz with respect to his official position with both the Maspeth and Schuster Corporations, it is clear that he was deeply involved in the financial and business affairs of both. (Finding of Facts 12, 13, 14.)

Labowitz also alleged that he, neither personally nor through Samuel and Sons, was a joint venturer with Schuster or Maspeth, but because of the financial difficulties of both Schuster and Maspeth, Samuel and Sons advanced the payroll to Maspeth for its employees' payroll and social security taxes. (Plaintiff's pretrial brief, p. 2.)

Thus, Labowitz claims that he is not governed by Section 6672 of the IRC of 1954. This section states:

"*Any person* required to collect, truthfully account for, and pay over any tax imposed by this title who will-

fully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under Section 6653 for any offense to which this section is applicable." (Emphasis added.)

The allegations presented by the pleadings in this controversy are similar to those in two recent cases involving the liability of a surety and the liability of a joint venturer with respect to the payment of withholding taxes on behalf of a corporation.

In Pacific National Insurance Company v. United States, 270 F.Supp. 165 (N.D.Cal.1967), aff'd 422 F.2d 26 (9th Cir.), cert. denied 398 U.S. 937, 90 S.Ct. 1838, 26 L.Ed.2d 269 (1970), the plaintiff surety alleged that he was entitled to a refund of the withholding taxes he had paid, based on the following:

"Surety was not the employer of the employees * * *; surety was not obligated or authorized to withhold or collect income or FICA taxes from employees * *. * during the quarterly periods . . .; and surety was not a person required to collect, truthfully account for, or pay over any such tax within the meaning of sections 6671(b) and 6672 of the IRC of 1954 * * *.", at 168.

The court in dismissing the complaint noted that "[t]he mechanics of handling the disbursements from the special accounts enabled surety to exercise complete dominion and control of the funds, and to determine in its sole discretion the creditors to be paid. The policy which surety established and carried out, permitted payment of only those obligations which might later give rise to a claim under its bonds. In spite of specific requests made for funds to cover the amount of gross payrolls, surety refused to make funds available for anything, more than net payrolls", at page

169. The court thus holding the surety liable as a responsible person under Section 6672.

The procedure that Labowitz used to pay the Maspeth employees certainly falls within the proscribed conduct as outlined in *Pacific*. The payroll of Maspeth was prepared by Samuel and Sons' bookkeeper at the direction of Labowitz. (Finding of Fact 14.) After the payroll was prepared, which had had the federal withholding and social security taxes deducted (Finding of Fact 14), a check was drawn on the Samuel and Sons account for the amount of the payroll, again under the direction and control of Labowitz. The check was then cashed, the cash returned to Samuel and Sons' bookkeeper, who then proceeded to put the appropriate amounts of pay into the Maspeth employees' pay envelopes. (138, 139.) While there was some evidence produced that there was at some time a Maspeth checking account, there was no evidence produced that it was ever used in connection with any of Maspeth's financial obligations, specifically including the payment of its payroll; but that all of Maspeth's obligations were paid by Samuel and Sons under the control and direction of Labowitz. (Finding of Fact 20.)

Regan and Company v. United States, 290 F.Supp. 470 (E.D.N.Y.1968), presents an even more analogous situation to the instant controversy. In *Regan,* a corporation was formed, the Regan Corporation, to execute and perform a contract with the United States Army. The court found that the Regan Corporation was, de facto, a joint venture comprised of two other corporations. The court based its finding of the de facto joint venture on the fact that Mr. Weisman, while president of Weisman Company, Inc., became president of the Regan Corporation at its inception. Labowitz, attempting to avoid a Regan type of situation, avoided having any records made with respect to whom the officers of Maspeth or Schuster and Son were or even who the stockholders were.

(112, 113.) Labowitz' plan, however, would not release him from his statutory obligation even under *Regan*.

The court in *Regan* noted that the subsequent resignation of Weisman from the Regan Company did not release him from his obligations with respect to the payroll taxes. The court stated that "irrespective of his official designation Weisman continued to function in fact as managerial head of Regan with duties and authority undiminished throughout the project until full performance." (At page 473.) Continuing, the court pointed out that "Weisman was in over-all charge of the radar project, with complete responsibility for running the job. He negotiated all subcontracts, coordinated the efforts of subcontractors, made provision for supplies and dealt with vendors, planned the construction work and functioned as business manager."

These two cases are in accord with the general principles applied in reaching a determination as to whether a person is a responsible person under the statute and thus have imposed upon them the duty to pay the taxes due.

The courts tend to disregard the formalistic functions of the various corporate officers and instead emphasize where ultimate authority for decision not to pay taxes lies, and for this reason, "responsible person" is more frequently defined as the person who has the final word as to what bills or creditors should or should not be paid. White v. United States, 178 Ct.Cl. 765, 372 F.2d 513 (1967). This same definition has been expressed in other cases as the individual who was in control of the financial affairs of the firm in question. Horwitz v. United States, 339 F.2d 877 (2d Cir. 1965); "One so connected with a business as to be in a position to exercise full authority with respect to its financial affairs." Melillo v. United States, 244 F.Supp. 323, 327 (E.D.N.Y. 1965). In essence, the courts are looking to the classic criteria of substance over form.

208

■ Labowitz not only had complete control over the financial affairs of Maspeth, including the payment of Maspeth's payroll, but he also made the decisions with respect to which bills were to be paid by Maspeth, as was elicited by the testimony of Samuel and Sons' bookkeeper. (135, 136; Finding of Fact 13.) Also, nowhere in Labowitz' testimony did he ever deny the control of Maspeth's finances.

■ In considering who the responsible person is under Section 6672 the court may also consider the identity of the individual who hired and controlled the employees. Datlof v. United States, 252 F.Supp. 11 (E.D.Penn.1966). Labowitz' control over the Maspeth construction site (Finding of Fact 9) and the Maspeth employees (Finding of Fact 9) clearly places Labowitz within the proscribed standards used in consideration of the responsible person under Section 6672.

Labowitz, having assumed control over Maspeth, cannot now be heard to disavow responsibility for compliance with the statutes requiring him to pay the withholding and social security obligations of Maspeth.

Labowitz in his pretrial brief contended that the government, recognizing that Schuster may also be liable for the tax assessment, impleaded Schuster as a third-party defendant and thereby relieved Labowitz of the liability. (Plaintiff's pretrial brief, p. 4.) This does not follow. Notwithstanding the fact that Schuster suffered a default judgment in this instant action, even if Schuster is found liable, this does not ipso facto release Labowitz of his obligation. "The existence of the same duty and concomitant liability in another official likewise has no effect on the [other] taxpayer's responsibility. Liability attaches to those with power and responsibility within the corporate structure for seeing that the taxes withheld from various sources are remitted to the Government. This duty is *generally found* in high corporate officials charged with general control over corporate business affairs who participate in decisions concerning payment of creditors and disbursal of funds." (Emphasis added.) Monday v. United States, 421 F.2d 1210 (7th Cir. 1970); Datlof v. United States, supra.

BURDEN OF PROOF

■ When a plaintiff seeks a refund on a tax assessment, he must carry the burden of proof. This burden is both on his claim for a refund and on the government's counterclaim. The plaintiff must persuade the finder of fact by a preponderance of the evidence that the assessment is incorrect. United States v. Lease, 346 F.2d 696 (2d Cir. 1965); Lesser v. United States, 368 F.2d 306 (2d Cir. 1966) (en banc).

■ However, where the government seeks to reduce its assessment to judgment, the burden is prima facie met by proof of the assessment. United States v. Molitor, 337 F.2d 917 (9th Cir. 1964). The plaintiff in this action has stipulated to the assessment. (Finding of Fact 18.) Thus, with the introduction into evidence of the assessment, the signed Internal Revenue forms [3] (Finding of Fact 20) and Labowitz' proposal (Finding of Fact 20), the government has met its burden of proof.

By reason of the proof adduced by the United States, Labowitz is now estopped from denying his position as a responsible officer of the Maspeth Corporation.

3. Although Labowitz admits that he signed the I.R.S. forms, he denies ever signing them in any official capacity for Maspeth. (41–51, 86.) He even alleged they were blank when he signed them. However, both his accountant and the I.R.S. agent, assigned to the Maspeth case, testified that the forms were filled in at the time Labowitz signed them or immediately after he signed them while he was present. (236, 238, 244–245, 247, 251.) Labowitz' accountant also testified that he had sent some forms to Labowitz for his signature, which he had completed before sending to Labowitz. (197.)

## WILFULNESS

Section 6672 requires the taxpayer's action be wilful. "Wilful" within the purview of Section 6672 need not be "[the] present . . . intent to defraud or deprive the United States of the taxes collected or withheld for its account, nor need bad motives be present in order to invoke the sanctions . . .. The decision of . . . the responsible officer of the corporation not to have the corporation pay over to the government the withheld taxes [is] a voluntary, conscious, and intentional act to prefer other creditors of the corporation over the United States. . . . [S]uch conduct [is] willful within the meaning of section" 6672. Bloom v. United States, 272 F.2d 215, 223 (9th Cir. 1960). Thus, by Labowitz paying the salaries and other creditors of the Maspeth Corporation with the knowledge of the liability for withholding taxes and social security taxes then presently due and in arrears (Finding of Fact 15) it constituted a wilful evasion under Section 6672. Frazier v. United States, 304 F.2d 528 (5th Cir. 1962).

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the subject matter and persons of this law suit.

2. Plaintiff has not proved by a fair preponderance of the credible evidence that he was not a responsible person within the purview of Section 6672 of the Internal Revenue Code for the quarterly periods here in question. Plaintiff's complaint is, therefore, dismissed.

3. Joseph Labowitz is a responsible person under Section 6672 of the Internal Revenue Code, and the United States is, therefore, entitled to judgment against plaintiff, Joseph Labowitz, granting its counterclaim, in the amount of $4,763.61, plus interest on the unpaid balance of the assessment since the date of assessment.

4. The United States of America, as third-party plaintiff, is entitled to judgment against the third-party defendant, Dennis Schuster, who has defaulted in appearance, in the amount of $4,763.61, plus interest on the unpaid balance of the assessment since the date of assessment.

5. The United States of America is entitled to its costs in this action against plaintiff Labowitz and third-party defendant Schuster as provided by law.

Settle judgment promptly on notice pursuant hereto.